**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **OWEN M. SMITH AND DANA N. SMITH** | § | |
| | § | |
| | § | |
| **V.** | § | **A-09-CV-881 LY** |
| | § | |
| | § | |
| **NATIONAL CITY MORTGAGE, USA** | § | |
| **MORTGAGE D/B/A LAKEWAY** | § | |
| **MORTGAGE, BAC HOME LOANS** | § | |
| **SERVICING, L.P., BARRETT DAFFIN** | § | |
| **FRAPPIER TURNER & ENGEL, L.L.P.** | § | |
| **AND JOHN DOES 1 THROUGH 100** | § | |

**INTERIM REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant Barrett Daffin Frappier Turner & Engel, LLP's Rule

12(b)(6) Motion to Dismiss for Failure to State a Claim or, in the Alternative, Rule 12(e) Motion for

a More Definite Statement (Clerk's Docket No. 32);  Defendant BAC Home Loans Servicing, L.P.'s

12(b)(6) Motion to Dismiss (Clerk's Docket No. 36);  Defendant National City Mortgage's Amended

Motion to Dismiss Amended Complaint pursuant to Rule 12(b)(6) (Clerk's Docket No. 47);

Plaintiffs' Motion to Order Mortgage Interest and/or Note Fraudulent (Clerk's Docket No. 48);

Defendant USA Mortgage's Motion to Strike Plaintiffs' Notice of Admitted Facts (Clerk's Docket

No. 52);  Defendant BAC Home Loans Servicing, L.P.'s Motion to Strike Plaintiffs' Notice of

Admitted Facts and Motion for Sanctions (Clerk's Docket No. 58);  Defendant Barrett Daffin

Frappier Turner & Engel, LLP's Motion to Strike Plaintiffs' Notice of Admitted Facts and Motion

to Strike Plaintiffs' Request for Admissions (Clerk's Docket Nos. 62 & 69); and the Parties Response and Reply Briefs.

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  GENERAL BACKGROUND

On January 28, 1998, Plaintiffs Owen and Dana Smith ("Plaintiffs") purchased a residential home located at 3 Waterfall Drive, Austin, Texas ("Property"). Plaintiffs financed the purchase of the Property by obtaining a first mortgage through National Mortgagelink, Ltd. and a second mortgage through Guaranty Federal Bank, F.S.B.[1]  In January 2004, Plaintiffs refinanced the mortgages on their Property, paid off their previous mortgages and obtained a new mortgage with National City Mortgage Co. ("National City").  In December 2007, Plaintiffs again refinanced their mortgage on their Property this time by paying off their mortgage to National City and obtaining a new mortgage with Countrywide Home Loans, Inc. ("Countrywide").  In December 2008, Countrywide sold Plaintiffs' mortgage to Bank of America, N.A.  Shortly thereafter, Plaintiffs stopped making payments on their mortgage to Bank of America, thereby defaulting on their home mortgage.

---

[1]Plaintiff did not name these entities as defendants in the case.

Accordingly, on August 19, 2009, BAC Home Loan Servicing, L.P., an operating subsidiary of Bank of America,[2] filed a home equity foreclosure proceeding against Plaintiffs, pursuant to Texas Rule of Civil Procedure 736, in the 200th Judicial District of Travis County, Texas. *See* Cause No. D-1-GN-09-002702. However, on December 8, 2009, the foreclosure proceeding was abated due to the filing of the instant lawsuit. See Tex. R. Civ. Pro. 736(10).

Plaintiffs' lawsuit alleges that National City Mortgage, Countrywide Bank, Mortgage Electronic Registration System, USA Mortgage d/b/a Lakeway Mortgage, BAC Home Loans Servicing, L.P., and John Does 1 through 100 were involved in a "predatory lending enterprise in a scheme to obtain illegal fees and profits at Plaintiffs' expense," sold counterfeit securities and attempted to evict Plaintiffs from their home "in an attempt to disguise the fraud once the fraud was discovered." Plaintiffs' Amended Complaint at p. 3. Plaintiffs' Amended Complaint alleges a plethora of claims against the Defendants including claims under the Truth in Lending Act, the Home Ownership Equity Protection Act, the Racketeering and Influenced Corrupt Organization Act, the Fair Credit Reporting Act, as well as claims for counterfeit securities, fraud, breach of contract, fair credit reporting act, unjust enrichment, and breach of good faith and fair dealing, as well as claims for injunctive relief. However, it is not clear which claims are being asserted against which defendants in the case. Plaintiffs have also named Barrett Daffin Frappier Turner & Engel, LLP, attorneys of record for Defendant BAC Home Loans Servicing, L.P., as a defendant in the case based upon the law firm's representation of Defendant BAC in the foreclosure proceeding against Plaintiffs.

---

[2]In April 2009, Countrywide Financial Corporation and all of its related entities merged with Bank of America. At that time, Countrywide Home Loans Servicing L.P. changed its name to BAC Home Loans Servicing, L.P., which is an operating subsidiary of Bank of America, N.A.

Defendants contend that Plaintiffs filed this lawsuit solely in an attempt to delay the foreclosure proceeding against them. Defendants Barrett Daffin Frappier Turner & Engel, LLP's, BAC Home Loans Servicing, L.P., and National City Mortgage have all filed Motions to Dismiss which the Court will address below.[3]

## II.  MOTIONS TO STRIKE

In April 2010, Plaintiffs served Requests for Admission on Defendants USA Mortgage ("USAM"), BAC Home Loans Servicing, L.P. ("BAC"), and Barrett Daffin Frappier Turner & Engel, LLP ("BDFTE").  On June 3, 2010, Plaintiffs filed "Notices of Admitted Facts" asserting that the Court should take "judicial notice of those facts" pursuant to Rule 36(a)(2) since Defendants USAM, BAC and BDFTE failed to timely respond to their Requests for Admission.  In response, the Defendants have each filed Motions to Strike Plaintiffs' Notices of Admitted Facts (Clerk's Docket Nos. 52, 58 and 62).

Under Federal Rule of Civil Procedure 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." FED. R. CIV. P. 26(d)(1).  It is undisputed that the parties have not yet conferred in this case as is required by Rule 26(f).  Because this proceeding is not exempt under Rule 26 and the Court has not issued an expedited discovery order, it is premature for the Plaintiffs to seek discovery in this case since they have not yet had the required Rule 26(f) conference.  Accordingly, Plaintiffs' Notices of Admitted Facts are premature and, therefore, Defendants' Motions to Strike (Clerk's

---

[3]On March 26, 2010, the District Court granted Defendants Countrywide Home Loans, Inc.'s and Mortgage Electronic Registration System, Inc.'s 12(b)(6) Motion to Dismiss.  *See* Clerk's Docket No. 16.

Docket Nos. 52, 58, and 62)[4] are HEREBY GRANTED.  The Clerk is ORDERED to STRIKE Plaintiffs' Notices of Admitted Facts (Clerk's Docket Nos. 49, 50 and 51) from the record in this case.

The Court FURTHER GRANTS BDFTE's Motion to Strike Plaintiffs' Second Request for Admissions (Clerk's Docket No. 69) since it is duplicative of Plaintiffs' First Request for Admissions and BDFTE already answered the Requests.  Accordingly, the Clerk is ORDERED to STRIKE Plaintiffs' Second Request for Admissions from the record in this case.

### III.  STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must consider the allegations of a *pro se* plaintiff's complaint liberally. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, "[p]ro se status does not give plaintiff a prerogative to file meritless claims." *Olstad v. Collier*, No. 06-50099, 2006 WL 3687108 at *1 (5th Cir. 2006) (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)).  In other words, *pro se* status does not offer the plaintiff an "impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson*, 808 F.2d at 359.

In reviewing the motion, the court is to take all of the well-pleaded facts in the complaint as true, viewing them in the light most favorable to the plaintiff.  *Martin K. Eby Constr. Co. v. Dallas*

---

[4] Because the Court agrees that the Notices should be struck from the record based on the Plaintiffs' failure to abide by the discovery rules, the Court need not address the alternative arguments in the Motions to Strike.  However, the Court **DENIES** BAC's Request for Sanctions at this time.

*Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). For years, the long-standing rule had been that a court may not dismiss a case under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court articulated the standard differently, stating instead that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 570 & 555. Subsequently, the Supreme Court has clarified that this new standard applies to all case, not just to antitrust cases such as *Twombly*. *See Ashcroft v. Iqbal*, – U.S. – , 129 S.Ct. 1937, 1953 (2009).

## IV. ANALYSIS

### A.     BDFTE's Motion to Dismiss

As noted above, Plaintiffs have named Barrett Daffin Frappier Turner & Engel, LLP ("BDFTE"), attorneys of record for Defendant BAC Home Loans Servicing, L.P. ("BAC"), as a defendant in the case based upon the law firm's representation of BAC in the foreclosure proceeding against Plaintiffs. Specifically, Plaintiffs allege that BDFTE "became a party to the fraud [presumably the fraud allegedly perpetrated by Defendants in financing Plaintiffs' home] when they handled the foreclosure proceedings and knowingly failed to investigate the legitimacy of the claims, only interested in collecting fees from a foreclosure proceeding they knew or should have known to be fraudulent from its inception." Plaintiffs' Amended Complaint at ¶ 2. In defense, BDFTE emphasizes that it had no involvement in the origination and servicing of Plaintiffs' loan agreements and that its only involvement with Plaintiffs was as a law firm representing its client, BAC, in a

6

foreclosure proceeding.  Thus, BDFTE argues that it is "qualifiedly immune" from Plaintiffs' lawsuit.

The public has an interest in "loyal, faithful and aggressive representation by the legal profession." *Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.-Houston [1st Dist.] 1994, writ denied). Thus, an attorney is charged with the duty of zealously representing his clients within the bounds of the law.  *Id.*  In fulfilling this duty, an attorney "has the right to interpose any defense or supposed defense and make use of any right in behalf of such client or clients as [the attorney] deem[s] proper and necessary, without making himself subject to liability in damages." *Id.* (internal quotations and citations omitted).  To promote zealous representation, state and federal courts in Texas have held that an attorney has "qualified immunity" from civil liability, with respect to nonclients, for actions taken in connection with representing a client in litigation. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.-Houston [1st Dist.] 2005, pet. denied). *See also, Taco Bell Corp. v. R.W. Cracken*, 939 F. Supp. 528, 532-33 (N.D. Tex. 1996) (finding that Texas would bar claims by one party against the opposing party's attorney); *Guthrie v. Buckley*, 2003 WL 22455394 at * 1 (5th Cir. Oct. 29, 2003) ("An attorney or an opposing party may seek sanctions for the opposition's allegedly meritless or malicious acts, 'but the law does not provide a cause of action'").  This immunity rule focuses "on the kind of conduct engaged in, not on whether the conduct was meritorious in the context of the underlying lawsuit." *Id.* at 72.  Thus, a third party non-client has no right of recovery against an attorney for filing various motions in a lawsuit, regardless of whether the motions were meritless or even frivolous "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Id.*

In the instant case, Plaintiffs allege that BDFTE became a party to "the fraud" when "they handled the foreclosure proceedings and knowingly failed to investigate the legitimacy of the claims." Plaintiffs' Amended Complaint at ¶ 2.  Representing a mortgage company and filing a foreclosure action against homeowners who have defaulted on their loan is clearly the kind of "conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Id.  See also, Renfroe v. Jones & Assoc.,* 947 S.W.2d 285, 288 (Tex. App.– Fort Worth 1997, writ denied) (holding that plaintiff had no cause of action against attorney for his participation in filing writ of garnishment with inaccurate facts); *Graham v. Turcotte,* 628 S.W.2d 182, 184 (Tex. App.– Corpus Christi 1982, no writ) (holding that because no privity of contract existed between mortgagors and attorney of mortgagee, mortgagors could not sue attorney directly alleging that excessive attorney's fees were exacted upon foreclosure); *Berkley v. Unell*, 1995 WL 500275 (Tex. App. – Dallas 1995, writ denied) (affirming trial court's  ruling that law firm owed no duty to non-client  plaintiff whose property was foreclosed on).  Moreover, "[l]abeling the conduct as fraudulent does not automatically make it actionable and the attorneys liable." *Dixon Financial Services, LTD v. Greenberg, Peden, Siegmyer & Oshman, P.C.,* 2008 WL 746548 at * 11 (Tex. App.– Houston [1[st] Dist.] March 20, 2008, pet. denied).  *See also*, *McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 448 (N.D. Tex. 1997) (holding that plaintiff could not recover against attorney representing opposing party in previous suit based on attorney's allegedly false statements in affidavit and motion for new trial filed in that suit).  Because Plaintiffs have failed to allege any facts which would overcome BDFTE's qualified immunity with regard to Plaintiffs' claims, BDFTE's Motion to Dismiss should be granted and Plaintiffs' claims against BDFTE should be dismissed from this lawsuit.

**B.     BAC and National City's Motions to Dismiss**

Although it is not clear which claims are being asserted against which defendants in this case, Plaintiffs' Amended Complaint alleges claims under the Truth in Lending Act, the Home Ownership Equity Protection Act, the Racketeering and Influenced Corrupt Organization Act, the Fair Credit Reporting Act, as well as claims for counterfeit securities, fraud, breach of contract, unjust enrichment, breach of good faith and fair dealing and claims for injunctive relief.  Defendants BAC Home Loans Servicing, L.P. ("BAC") and National City Mortgage (collectively "Defendants") have filed the instant Motions to Dismiss pursuant to Rule 12(b)(6) arguing that all of Plaintiffs' claims should be dismissed from this lawsuit.  Because Plaintiffs have failed to clarify which claims are being asserted against which Defendants in the case, the Court will address each claim independently to determine whether the claim should be dismissed under Rule 12(b)(6).

**1.     18 U.S.C. §§ 4 and 513**

Plaintiffs' Amended Complaint alleges that "the Defendants" in this case engaged in misprision of a felony and the sale of counterfeit securities, in violation of 18 U.S.C. § 4 and § 513. However, 18 U.S.C. § 4 and 18 U.S.C. § 513 are federal criminal statutes which do not provide for a private right of action.  "[A] private party may not enforce criminal statutes through a civil action." *Florence v. Buchmeyer*, 500 F. Supp.2d 618, 635 (N.D. Tex. 2007).  Decisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion, and, as private citizens, Plaintiffs have no standing to institute a federal criminal prosecution and no power to enforce a criminal statute. *See Gill v. Texas*, 2005 WL 2868257 at * 1 (5th Cir. Nov. 1, 2005) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979); and *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960), *cert. denied*, 365 U.S. 838 (1961)).

Accordingly, Plaintiffs' claims under 18 U.S.C. § 4 and § 513 must be dismissed from this lawsuit because they are not legally cognizable.

    2.    **RICO**

Defendants argue that Plaintiffs' claims under the Racketeering and Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, *et seq.*, should be dismissed because Plaintiffs have failed to state any specific factual allegations to support their claim.

Plaintiffs' Amended Complaint alleges that the Defendants "conspired to participate in the affairs of the enterprise through a pattern of racketeering activity and collection of unlawful debt in violation of 18 U.S.C. § 1962(d)" by: (1) fraudulently misrepresenting their right to collect fees from Plaintiffs; (2) fraudulently misrepresenting the true cost of Plaintiffs' loan payments and by misrepresenting the terms of the various loans; (3) fraudulently backdating documents; (4) failing to maintain for inspection the original blue ink signature of the mortgage; and (5) failing to properly record transfers of the note with the County. Plaintiffs' Amended Complaint at 11-12. Plaintiffs further contend that the Defendants used the United States mail "in furtherance of said pattern of racketeering activity and collection of unlawful debt and to otherwise defraud Plaintiffs" by obtaining credit information, receiving payments by mail and mailing collection letters. *Id.*

RICO creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." *Beck v. Prupis*, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)). In order to state a *prima facie* claim under RICO, a plaintiff must allege that there is (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242

(5th Cir. 1988), 489 U.S. 1079 (1989).  If the Plaintiffs fail to satisfy any one of the three prerequisites, the Court need not analyze the substantive requirements of the respective RICO subsections. *Tipton v. Northrop Grumman Corp.*, 2009 WL 3160163 at * 6 (E.D. La. Sept. 29, 2009).

As noted above, a plaintiff alleging a RICO claim must assert the existence of an enterprise. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 748 (5th Cir. 1989). "Enterprise" is defined as including "any individual, partnership, corporation, association . . .or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Thus, a RICO enterprise can be either a legal entity or an association-in-fact enterprise. *In re Burzynski,* 989 F.2d 733, 743 (5th Cir. 1993). An "association-in-fact" enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a *continuing unit* as shown by a hierarchical or consensual decision making structure. *Delta Truck*, 855 F.2d at 243 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Thus, the enterprise must not be one that briefly flourishes and fades. It must be one that, in the words of the Supreme Court, "functions as a continuing unit." *Id.* "Importantly, a plaintiff must also establish that the association exists for purposes other than simply to commit the predicate acts." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).  In addition, a proximate causal relationship must exist between the RICO predicate acts and the plaintiff's damages. *Old Time Enterprises, Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir. 1989).  If the defendant is a legal entity, the plaintiffs must do more than merely establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business. *Id.* at 1217.  The fact that officers or employees of a corporation, in the course of their employment, associate to commit predicate acts

11

does not establish an association-in-fact enterprise distinct from the corporation. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). Finally, a plaintiff must plead specific facts, not merely conclusory allegations, which establish the existence of an enterprise. *Montesano,* 818 F.2d at 427.

Plaintiffs' Amended Complaint alleges that "Defendants are entities capable of holding a legal or beneficial interest in property and as such are enterprises as defined by 18 U.S.C. § 1961(4)." Amended Complaint at ¶ 26. Plaintiffs have failed to plead specific facts showing that Defendants were an association-in-fact enterprise under RICO. Specifically, Plaintiffs fail to allege that Defendants functioned as a "continuing unit over time through a hierarchical or consensual decision-making structure." *Elliott*, 867 F.2d at 881. *See also, Delta Truck*, 855 F.2d at 244 (holding that plaintiff failed to state a RICO claim "because the pleadings do not assert that the corporate defendants posed a continuous threat as RICO persons"). Plaintiffs have also failed to allege that the alleged association exists for purposes "other than simply to commit the predicate acts." *Montesano*, 818 F.2d at 427. Plaintiffs have also failed to allege sufficient facts showing the requisite nexus between the RICO claim and the alleged damages. *See Old Time Enterprises*, 862 F.2d at 1219 (finding that district court properly dismissed complaint where plaintiff failed to allege facts showing the nexus between the claimed RICO violations and plaintiff's claimed damages). Based upon the foregoing, Plaintiffs have failed to allege an association-in-fact enterprise as to any of the Defendants in the case. Because the existence of an enterprise "is an essential element of a RICO claim under 18 U.S.C. § 1962(c)," Plaintiffs' RICO claims should be dismissed. *Montesano*, 818 F.2d at 426.

3.   **TILA and HOEPA**

Plaintiffs' Amended Complaint also asserts claims under the Truth In Lending Act ("TILA"),15 U.S.C. § 1601, *et seq.,* and the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639.  The TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980) (citing 15 U.S.C. § 1601).  TILA requires creditors to disclose to borrowers the terms and conditions of the loan such as the amount financed, the finance charges, the number of payments scheduled to repay the loan, as well as the borrower's right to rescind the loan. 15 U.S.C. §§ 1635(a) & 1638(a); *Castrillo v. American Home Mortgage Servicing, Inc.*, 670 F. Supp.2d 516, 527 (E.D. La. 2009).  Plaintiffs assert two different claims under the TILA.  First, Plaintiffs assert a rescission claim based on the allegation that "the Defendants" failed to disclose to the Plaintiffs that they had a right to rescind the mortgage loan, in violation of 15 U.S.C. § 1635(a).  Second, Plaintiffs assert a damages claim based on the Defendants' alleged failure to fully disclose the amount financed, the finance charges, the total amount of payments required, the number, amount and due dates of the payments and that a security interest was taken in the subject property, as is required by 15 U.S.C. § 1638(a).

Congress passed the HOEPA as an amendment to TILA in order to heighten the disclosure requirements for certain types of loans made at higher interest rates or with excessive costs or fees. 15 U .S.C. 1602(aa)(1); *In re Community Bank of N. Va.*, 418 F.3d 277, 304 (3d Cir. 2005). Plaintiffs allege that the Defendants violated HOEPA by failing to provide Plaintiffs with the additional disclosures referenced in § 1639(a)(1).  Plaintiffs seek monetary damages under § 1640 and assert a statutory right to rescind the loan transaction under § 1640.  Because the applicability

of the various provisions of the TILA and HOEPA differ with regard to each Defendant in this case, the Court will address Plaintiffs' claims separately with regard to each of the Defendants.

### a.      Claims against National City

The only loan transaction between Plaintiffs and National City which would have triggered the notice and disclosure requirements under the TILA and HOEPA occurred in January 2004, when Plaintiffs refinanced their mortgage and obtained a new mortgage from National City. *See* Amended Complaint at ¶ 21.

The TILA contains a one year statute of limitations for damages claims[5] and a three year statute of limitations for rescission claims.[6] Thus, Plaintiffs were required to file their damages claims against National City by January 2005, and any rescission claim by January 2007.  Plaintiffs have not demonstrated that they are entitled to have the statute of limitations tolled in this case under the doctrine of equitable tolling.  *See Bitte v. EMC Mortgage Corp.*, 2009 WL 1950911 at * 2 (E.D. La. July 1, 2009) (holding that statute of limitations barred Plaintiff's TILA claims where plaintiffs had at least five years to uncover any alleged violations of TILA).  Because Plaintiffs did not file their claims against National City until December 2009, their claims under the TILA and HOEPA are time-barred.  *See Lynch,* 588 F. Supp.2d at 1259 (holding that TILA damages claim was time barred where lawsuit was filed more than one year after the loan documents were signed).

---

[5]See 15 U.S.C. § 1640(e)("any action under this section may be brought in any United States district court . . .within one year from the date of the occurrence of the violation"*)*.  "The date of the violation refers to the date 'the loan documents were signed." *Lynch v. RKS Mortgage Inc.,* 588 F. Supp.2d 1254, 1259 (E.D. Ca. 2008) (quoting *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003)).

[6]See 15 U.S.C. § 1635(f) (The right of rescission pursuant to TILA "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first. . .").

Plaintiffs' HOEPA claims against National City are also time-barred since claims under the HOEPA are subject to the TILA's statute of limitations. *See Lechner v. Citimortgage, Inc.*, 2009 WL 2356142 at * 4 (N.D. Tex. 2009).  Accordingly, Plaintiffs' rescission and damages claims under the TILA and HOEPA against National City are time barred and must be dismissed.

   **b.**  **Claims against BAC**

The only loan transaction between Plaintiffs and BAC which would have triggered the notice and disclosure requirements under the TILA and HOEPA occurred in December 2007, when Plaintiffs negotiated with Countrywide Home Loans, Inc.[7] to refinance their mortgage.  *See* Plaintiffs' Amended Complaint at ¶ 22.  As previously noted, Countrywide Home Loans Servicing, L.P. changed its name to BAC Home Loans Servicing, L.P. in 2009.

As discussed above, the TILA contains a one year statute of limitations for damages claims and a three year statute of limitations for rescission claims. 15 U.S.C. § 1640(e) and § 1635(f). While Plaintiffs' rescission claim against BAC is timely since it was filed within the three year statute of limitations, Plaintiffs were required to file any damages claim against BAC by December 2008.  Because Plaintiffs did not file this lawsuit until December 2009, their damages claim under § 1638(a) against BAC is time-barred and must be dismissed.

Although Plaintiffs' rescission claim against BAC is not time barred, BAC argues that it should nevertheless be dismissed because "residential mortgage transactions are specifically excluded from the consumer's right to rescind."  Motion to Dismiss at p. 7.  While BAC is correct

---

[7]BAC does not dispute that Plaintiffs' TILA and HOEPA claims against it arise from the 2007 refinancing transaction with Countrywide.  See BAC's Motion to Dismiss at p. 7.

that the statute excludes certain residential mortgage transactions from the consumer's right to rescind, those exclusions are more narrowly drawn than BAC implies.

The TILA defines a "residential mortgage transaction" as "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance *the acquisition or initial construction* of such dwelling." 15 U.S.C. § 1602(w) (emphasis added). Thus, the TILA does not provide for a right to rescind with respect to the *original* loan transaction. The statute also excludes the right to rescind a loan transaction involving a *refinancing* by the *same* creditor. *See* 15 U.S.C. § 1635(e)(2); 12 C.F.R. § 226.23(f)(2) ("The right to rescind does not apply to. . .[a] refinancing. . .by the same creditor..."). However, the statute does not exclude a right to rescind with respect to a refinancing of a residential mortgage by *a different creditor* or with respect to a variable-rate adjustment to a residential mortgage. *See* 12 C.F.R. § 226.23(f)(2); *see also*, *Castrillo,* 670 F. Supp.2d at 527 (citing Official Staff Interpretation, Supp. I to 12 C.F.R. § 226.20(f), ¶ 4 ("The exemption in § 226.23(f)(2) applies only to refinancings. . .by the original creditor.")). Because Plaintiffs' claims against BAC stem from the *refinancing* of their mortgage with Countrywide in 2007 – which was not Plaintiffs' *original creditor* – the exclusion contained in §1635(e)(1) does not apply to Plaintiffs' rescission claim against BAC. *See Frazile v. EMC Mortgage Corp.*, 2010 WL 2331429 at * 3 (11th Cir. June 11, 2010) (holding that §1635(e)(1) exemption did not apply to plaintiff's rescission claim where transaction at issue was a refinancing for the mortgage); *Zuniga v. HSBC Mortgage Corp.*, 2010 WL 292723 at * 2 (N.D. Cal. Jan. 19, 2010) (finding that TILA residential home exemption did not apply to right to rescind where mortgage at issue was a refinancing of an existing mortgage). Accordingly, BAC's exclusion argument is misplaced.

16

While Plaintiffs' rescission claim is not precluded under §1635(e)(1), it must nevertheless be dismissed because Plaintiffs have failed to allege sufficient facts to show that their loan agreement with BAC was subject to TILA's rescission provisions.  For a refinancing with a *different creditor* to give rise to a right of rescission, the existing obligation must be "satisfied and replaced by a new obligation." 12 C.F.R. § 226.20(a).  The "new obligation must completely replace the prior one." Official Staff Interpretation, Supp. I to 12 C.F.R. § 226.20(a), ¶ 1.  "Thus, mere changes to the terms of an existing obligation do not give rise to a right of rescission unless accomplished by the cancellation of that obligation and the substitution of a new obligation." *Castrillo,* 670 F. Supp.2d at 527.  Plaintiffs have failed to allege any facts showing that their refinancing with BAC satisfied their existing obligation and was replaced by a new obligation. *See Id.* (holding that plaintiff's rescission claim failed to allege sufficient fact s to show that the agreement was subject to the TILA rescission provisions); *Sheppard v. GMAC Mortgage Corp.*, 299 B.R. 753, 762 (E.D. Pa. 2003) (dismissing plaintiffs' rescission claim where they failed to show that the loan modification satisfied the original loan).  Accordingly, Plaintiffs have failed to state a claim for rescission under § 1635(a) of the TILA against BAC.

The Court also finds that Plaintiffs' HOEPA claim against BAC should also be dismissed. In order to be subject to the protections afforded by HOEPA, a plaintiff must demonstrate that either the annual percentage rate of the loan at consummation exceeded by more than 10 percent the applicable yield on treasury securities, or the total points and fees payable by the consumer at or before closing was greater than 8 percent of the total loan amount, or $400.00. 15 U.S.C. § 1602(aa)(1) & (3); 12 C.F.R. § 226.32(a)(1); *Lynch,* 588 F. Supp.2d at 1260.  Plaintiffs' Amended Complaint does not allege any particular facts showing that the percentage threshold for HOEPA

protection was actually crossed in this case.  "That failure alone subjects the claim to dismissal."

*Lynch,* 588 F. Supp.2d at 1260.  *See also*, *Marks v. Chicoine*, 2007 WL 160992 at *8 (N.D. Cal.

2007) (court dismissed claim for violation of HOEPA where plaintiff failed to allege facts that would

support a conclusion that HOEPA applied to the loan at issue); *Justice v. Countrywide Home Loans,

Inc.*, 2006 WL 141746 at *2 (E.D. Tenn. 2006) (where complaint alleged that excessive fees were

charged in violation of HOEPA but failed to specify such fees, dismissal was appropriate, since "the

bare incantation of statutory terms, without corresponding allegations to support recovery, does not

state a claim.").  Accordingly, Plaintiffs have failed to demonstrate that they are subject to the terms

of HOEPA and thus their HOEPA claim against BAC must therefore be dismissed.

### 4.   **Fraud**

Plaintiffs allege that the Defendants falsely represented to Plaintiffs that "[P]laintiffs would

obtain the loan as previously and verbally discussed prior to the underwriting process."  Amended

Complaint at ¶ 48.  To establish fraud under Texas law, Plaintiffs must show: (1) that a material

representation was made; (2) the representation was false; (3) when the representation was made,

the speaker knew it was false or made it recklessly without any knowledge of the truth and as a

positive assertion; (4) the speaker made the representation with the intent that the other party should

act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered

injury.  *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

In addition, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement

on plaintiffs alleging fraud.   Under Rule 9(b), the claim must "state with particularity the

circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  Courts interpret Rule 9(b) strictly,

requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the

speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002)). Thus, Rule 9(b) requires that plaintiffs plead enough facts to illustrate "the 'who, what, when, where, and how' of the alleged fraud." *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). "[G]eneral allegations, which do not state with particularity what representations each defendant made, do not meet this requirement." *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986).

In their bare-bones fraud allegation, Plaintiffs merely allege that Defendants falsely represented to Plaintiffs that they would obtain "the loan" as previously discussed and that their FICA score was strong enough to qualify for a lower interest rate "regardless of the down payment." Amended Complaint at ¶ 48-49. Plaintiffs fail to specifically identify any person, place time or specific statement maybe by either National City or BAC that was false. Accordingly, Plaintiffs have failed to plead sufficient facts to illustrate the "who, what, when, where, and how" of the alleged fraud committed by the Defendants. *See Grant-Brooks v. WMC Mortgage Corp.*, 2003 WL 23119157 at * 5 (N.D. Tex. Dec. 9, 2003) (dismissing fraud claim where Plaintiff "failed to identify which 'Defendant' perpetrated a fraud against her with respect to the loan agreement she entered into."); *Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex.1993) ("The allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants."). Accordingly, Plaintiffs' fraud claims should be dismissed.

Plaintiffs' fraud claim against National City also appears to be barred by the four-year statute of limitations contained in Tex. Civ. Prac. & Rem Code 16.004(a)(4).   See *Gibson v. Houston Launch Pad*, 2010 WL 1923364 at * 2 (5th Cir. May 26, 2010) ("In Texas, common law fraud claims are subject to a four-year statute of limitations.").   Because Plaintiffs did not assert their fraud claim against National City until December 2009 – five years after the alleged fraud took place – their claim is also time-barred under §16.004(a)(4).

### 5.      Breach of Contract

Although the heightened pleading requirements of Rule 9(b) do not apply to Plaintiffs' breach of contract claims, the Court nevertheless finds that Plaintiffs have failed to plead sufficient facts to state a breach of contract claim under Texas law that is plausible on its face as required by Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 570.

Under Texas law, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.  *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.– Houston [1st Dist.] 2001, no pet.)). With regard to their breach of contract claim, Plaintiffs' allege that the Defendants entered into the loan transactions with "no intention of performing, in particular but not limited to the promise to obtain a loan that did not include a three year pre payment penalty." Amended Complaint at ¶ 52. Plaintiffs further allege that "[a]s a result of Defendants' negligence in failing to do good faith dealings, failing to give proper disclosure as outlined herein, and causing the home to go into foreclosure, Defendants have breached the contract." *Id.*  Plaintiffs once again fail to specify which

defendant they are asserting their claim against. See *Powell v. Residential Mortg. Capital*, 2010 WL 2133011 at * 7 (N.D. Cal. May 24, 2010) (finding that plaintiff failed to allege breach of contract claim against lender where plaintiff failed "to specify with which Defendant he contracted and to which obligation the agreement pertains."). In addition, Plaintiffs do not specify what provision or for that matter what contract was allegedly breached. Plaintiffs fail to specify where "the promise to obtain a loan that did not include a three year pre payment penalty" was memorialized in the loan documents. *See Mae v. U.S. Property Solutions,* 2009 WL 1172711 (S.D. Tex. April 28, 2009) (dismissing breach of contract claim where property owner failed to assert which provision of the loan was allegedly breached); *L.L.C., Powell v. Residential Mortg. Capital*, 2010 WL 2133011 at * 7 (N.D. Cal. May 24, 2010) (holding that plaintiff's allegation that "Defendants promised to provide Plaintiff with an affordable loan" was vague, did not allege where such a promise was memorialized or what consideration was given for such a promise, and thus failed to show the existence of a contract). Moreover, Plaintiffs have conceded in their Amended Complaint that they have stopped making payments on their loan. "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004).

Because Plaintiffs have merely made conclusory allegations that "Defendants have breached the contract" without providing the Court with anything more specific to support their claims, Plaintiffs have failed to allege sufficient facts to withstand a right to relief for breach of contract "above the speculative level." *Flynn v. CIT Group*, 2008 WL 4375928 at * 2 (5th Cir. Sept. 26, 2008); *see also*, *Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*, 2009 WL 2900740 at

*5 (S.D. Tex. Aug. 31, 2009) (holding that the defendant's counterclaim alleging that "Plaintiff breached the contract" failed to meet Rule 8(a) standards since the "bare-bones allegation neither provides fair notice of the claim nor of the grounds on which it rests").

Plaintiffs' breach of contract claim against National City is also barred by the four-year statute of limitations contained in Tex. Civ. Prac. & Rem Code §16.004(a)(3) and § 16.051.  *See Smith Intern., Inc. v. Egle Group*, LLC, 490 F.3d 380, 386 (5th Cir. 2007) ("Under Texas law, indemnity and breach of contract claims are subject to a four-year statute of limitations") (citing *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206, 210-11 (Tex. 1999)).  Because Plaintiffs did not assert their breach of contract claim against National City until December 2009, it is time barred.

### 6.    Breach of Good Faith and Fair Dealing

Next, Plaintiffs allege that the Defendants breached their duty to act in good faith and deal fairly "in executing their obligations under the Note, Mortgage, and Deed of Trust at issue in this litigation." Amended Complaint at ¶ 58-59.  Plaintiffs' claim is precluded under Texas law.

The Texas Supreme Court has consistently held "that a duty of good faith is not imposed in every contract but only in *special relationships* marked by shared trust or an imbalance in bargaining power." *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) (emphasis added).  Regarding Plaintiffs' claim, Texas courts have held that the "special relationship" necessary to create a common-law duty to act in good faith does not apply to the relationship of mortgagor-mortgagee, *Lovell v. Western National Life Insurance Co.*, 754 S.W.2d 298, 303 (Tex. App.–Amarillo 1988, writ denied), creditor-guarantor, *Coleman*, 795 S.W.2d at 709, or lender-borrower, *Nance v. Resolution Trust Corp.*, 803 S.W.2d 323, 333 (Tex. App.– San Antonio

1990, writ denied).  See also, *F.D.I.C. v. Myers*, 955 F.2d 348, 350 (5th Cir. 1992) (holding that trustee owed neither fiduciary duty nor duty of good faith and fair dealing to mortgagor under Texas law); *Hinton v. Federal Nat. Mortg. Ass'n*, 945 F. Supp. 1052 (S.D. Tex. 1996) (holding same). Plaintiffs have failed to even assert a special relationship with any of the Defendants that would give rise to the duty of good faith and fair dealing.  Based upon the foregoing, Plaintiffs' breach of good faith and fair dealing claim must be dismissed.

### 7.     Predatory Lending

Plaintiffs allege that the Defendants "engaged in predatory lending" by failing "to put the actual agreement with plaintiffs in one concise true document without inconsistencies, altered signatures, missing signatures and initials in violation of the state and federal Constitutions." Amended Complaint at ¶ 54.  Once again, Plaintiffs' "predatory lending" claim fails to comply with even the liberal pleading standards of the Federal Rules of Civil Procedure.  Plaintiffs fail to specify which constitutional provision or statute Defendants have violated by their alleged predatory lending. *See Hambrick v. Bear Stearns Residential Mortg.*, 2008 WL 5132047 at * 2 (N.D. Miss. Dec. 5, 2008) (dismissing predatory lending claim where "plaintiffs have not cited any Mississippi or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending'"). Moreover, Plaintiffs conclusory allegations fail to allege sufficient facts to support their claim for "predatory lending." *See Franklin v. GMAC Mortg.*, 2010 WL 1063378 at * 2 (N.D. Tex. March 21, 2010) (dismissing *pro se* complaint under Rule 12(b)(6) where plaintiff's allegation that defendants "in an arbitrary and capricious way" denied him "the opportunity to own and refinance his home because of predatory lending policies" failed to allege any facts to support his claim).  Accordingly, Plaintiffs' predatory lending claim must be dismissed pursuant to Rule 12(b)(6).

8.     **Wrongful Foreclosure and Request for Injunction**

Plaintiffs allege that their property has been "wrongfully set for foreclosure by Defendants without giving appropriate notice to the Plaintiffs" and seek compensatory and punitive damages for the wrongful foreclosure. Amended Complaint at ¶ 56.  Defendants argue that Plaintiffs' claim for wrongful foreclosure must be dismissed because Plaintiffs are still in possession of the Property.

The elements of a wrongful foreclosure claim under Texas law are: (1) a defect in the foreclosure sale proceedings;[8] (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortg. Corp.,* 268 S.W.3d 135, 139 (Tex. App.– Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.– Houston [14th Dist.] 1989, writ denied)).  *See also*, *Rodriguez v. Ocwen Loan Servicing, Inc.*, 2008 WL 239652 at * 2 (S.D. Tex. Jan. 29, 2008) ("Under Texas law, wrongful foreclosure occurs when a foreclosure sale is improperly conducted and results in recovery of an inadequate price for the foreclosed property").  The party seeking relief must also show that the party suffered harm as a result of the wrongful disclosure. *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336 at * 4 (N.D. Tex. June 24, 2009).

Plaintiffs have failed to allege the essential elements for a wrongful foreclosure claim under Texas law.  *See Overton v. JPMC Chase Bank*, 2010 WL 1141417 at * 2 (S.D. Tex. March 20, 2010) (dismissing wrongful foreclosure claim where plaintiff failed to plead any facts supporting the required elements for the claim).  First, Plaintiffs cannot show that there was a "grossly inadequate selling price" because their was no sale of their house since the foreclosure proceedings were

---

[8]Texas Property Code § 51.002 establishes certain requirements governing foreclosure sales.

dismissed when Plaintiffs filed this lawsuit, pursuant to Tex. R. Civ. P. 736(10). Secondly, Plaintiffs

cannot show that they suffered any damages for the alleged wrongful disclosure since they are still

in *possession* of their house. As the Northern District of Texas explained recently:

> In a wrongful foreclosure suit the measure of damages is the difference between the
> value of the property in question at the date of the foreclosure and the remaining
> balance due on the indebtedness. This measure of damages is based upon a tort
> theory of recovery to compensate the aggrieved for his lost possession of the
> property. Because recovery is premised upon one's lack of possession of real
> property, individuals never losing possession of the property cannot recover on a
> theory of wrongful foreclosure. As such, courts in Texas do not recognize an action
> for *attempted* wrongful foreclosure.

*Baker*, 2009 WL 1810336 at * 4 (internal citations and quotations omitted) (emphasis added).

Because Plaintiffs have not lost possession of their home, "they seek damages for an *attempted*

wrongful disclosure—an action not recognized in Texas." *Id.* Accordingly, Plaintiffs' wrongful

foreclosure claim must be dismissed as well as their request for injunctive relief based on this claim.

### 9.   Fair Credit Reporting Act

Plaintiffs allege that the Defendants as "providers of information" violated the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2, by "report[ing] negative marks against Plaintiffs"

to unidentified credit reporting agencies. Amended Complaint at ¶ 62. Before addressing the merits

of Plaintiffs' claim, the Court will first address whether the FCRA provides for a private right of

action to enforce its provisions.

The FCRA governs the distribution of credit reports and "was crafted to protect an individual

from inaccurate or arbitrary information . . . in a consumer report and to establish credit reporting

practices that utilize accurate, relevant, and current information in a confidential and responsible

manner." *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989) (internal

quotations and citations omitted). *See also*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) ("Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy").  While the FCRA primarily regulates consumer credit reporting agencies, the statute also creates various obligations on "furnishers of information" to provide accurate information to consumer credit reporting agencies. *Davis v. World Financial Network Nat. Bank*, 2009 WL 4059202 at * 2 (N.D. Tex. Nov. 20, 2009). While the FCRA does not explicitly define "furnisher of information," courts have defined the term broadly to mean "an entity which transmits information concerning a particular debt owed by a consumer to a consumer reporting agency." *Alam v. Sky Recovery Services, Ltd.*, 2009 WL 693170 at * 4 (S.D. Tex. 2009) (quoting *Thomasson v. Bank One*, 137 F. Supp.2d 721, 722 (E.D. La. 2001)). Thus, the Defendants could be considered "furnishers of information" under the Act.

Under § 1681s-2(a), furnishers of information may not knowingly provide inaccurate information to consumer reporting agencies.  15 U.S.C. § 1681s-2(a).  However, there is no private cause of action under § 1681s-2(a).  See *Davis v. Sallie Mae, Inc.*, 2009 WL 2525303 (N.D. Tex. Aug. 18, 2009) (holding that there is no private right of action under section 1681s-2(a)) (quoting *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002)).  Thus, to the extent that Plaintiffs are alleging a claim for a violation of § 1681s-2(a), such a claim fails. However, Plaintiffs may pursue a private cause of action under § 1681s-2*(b)* of the FCRA, which details the duties of furnishers of information once they have been notified of a dispute with regard to the accuracy of information provided to a consumer reporting agency.

In *Young v. Equifax Credit Info. Services*, 294 F.3d 631, 639 (5th Cir. 2002), the Fifth Circuit declined to address whether a private right of action exists under §1681s-2(b), but nevertheless noted

that the "plain language of FCRA . . . appears to impose civil liability on 'any person' violating a

FCRA duty unless some exception applies."  While the Fifth Circuit has not ruled on the issue,

numerous district courts within this circuit, as well as other circuit courts, have held that there is a

private right of action for individuals asserting violations of §1681s-2(b).[9]  Thus, Plaintiffs have a

right to bring a private right of action under § 1681s-2(b) of FCRA.  Plaintiffs' Complaint, however,

fails to state a claim for relief against the Defendants under this subdivision.

Pursuant to § 1681i of FCRA, if a consumer disputes the accuracy of any information

contained in the consumer's credit report, the consumer must notify the consumer reporting agency

of the dispute.  15 U.S.C. § 1681i(a)(1).[10]  Once notified, the consumer reporting agency is required

to conduct a "reinvestigation" within 30 days of being notified to determine whether the disputed

information is inaccurate.  *Id.*  In addition, the agency must notify the *furnisher* of the information

being disputed of the dispute within five business days of being notified by the consumer.  15 U.S.C.

§ 1681i(a)(2).  Once the furnisher of information is notified of the dispute pursuant to § 1681i(a)(2),

the furnisher must conduct its own investigation with respect to the disputed information, correct any

---

[9]*See e.g., Nelson*, 282 F.3d at 1059-60 (holding that § 1681s-2(b) creates a cause of action for a consumer against a furnisher of credit information).  *See also, Chiang v. Verizon New England Inc.*, 595 F.3d 26, 36 (1st Cir. 2010) ("We join the vast majority of courts to have considered this issue in holding that a plain reading of the FCRA's text indicates that a private cause of action exists for individuals seeking remedies for furnishers' violations of § 1681s-2(b)");  *Saunders v. Branch Banking And Trust Co. of VA*, 526 F.3d 142, 149 (4th Cir. 2008) (finding that consumers can still bring private suits for violations of § 1681s-2(b));  *Davis*, 2009 WL 2525303 at * 4 (same);  *Davis v. Farm Bureau Bank, FSB*, 2008 WL 1924247 at * 3 n. 5 (W.D. Tex. April 30, 2008) (same);  *Carlson v. Trans Union LLC*, 259 F. Supp.2d 517, 519-20 (N.D. Tex. 2003) (same); *Mendoza v. Experian Info. Solutions, Inc.*, 2003 WL 2005832 at * 4 (S.D. Tex. March 25, 2003) (same).

[10]To establish a claim for a violation of 1681i (which Plaintiffs have not alleged in this case), the consumer must show that he or she *notified* the consumer reporting agency directly of a dispute within the relevant time for the case under the statute of limitations. *Reeves v. Equifax Information Services, LLC*, 2010 WL 2036661 at * 12 (S.D. Miss. May 20, 2010).

inaccurate information and notify the consumer reporting agency of the results of the investigation. 15 U.S.C. § 1681s-2(b).

Thus, in order to maintain a private right of action against the Defendants under § 1681s-2(b), Plaintiffs must demonstrate that: (1) they notified a consumer reporting agency of inaccurate information; (2) the consumer reporting agency *notified the Defendants* of the dispute; (3) the Defendants failed to conduct an investigation, correct any inaccuracies and failed to notify the consumer reporting agency of the results of the investigation. See *Id.*  Instead of alleging sufficient facts to show that Plaintiffs complied with the above-statutory requirements to bring a claim under § 1681s-2, Plaintiffs' Amended Complaint simply alleges that the Defendants, as "providers of information," violated § 1681s-2 by "report[ing] negative marks against Plaintiffs." Plaintiffs fail to allege who made the "negative marks" and fail to allege that the negative marks were actually *inaccurate*.  Moreover, Plaintiffs fail to allege that they ever notified a consumer reporting agency of a dispute with their credit report and, most importantly, that the Defendants were ever notified of said dispute.  "Such notice is necessary to trigger the furnisher's duties under Section 1681s-2(b)." *Young*, 294 F.3d at 639.  As the Fifth Circuit declared in *Young*, "any private right of action [Plaintiffs] may have under § 1681s-2(b) would require proof that a consumer reporting agency . . . had notified [Defendant] pursuant to § 1681i(a)(2).  294 F.3d at 639.  Because Plaintiffs' Amended Complaint fails to allege that the Defendants were ever notified of any inaccurate information contained in Plaintiffs' consumer credit report and failed to correct any alleged errors, Plaintiffs fail to state a viable claim under § 1681s-2(b).  *See e.g., Young*, 294 F.3d at 639 (holding that defendant could not be held liable for violation of FCRA where plaintiff failed to show that store had received notice of a dispute from a consumer reporting agency); *Davis*, 2009 WL 2525303 at * 4 (dismissing

28

FCRA claim for failure to state a claim where plaintiff failed to allege any facts showing that Sallie Mae was ever notified of any allegedly erroneous information).

      **10.**     **Unjust Enrichment**

Plaintiffs contend that they had "an implied contract" with the Defendants "to insure that Plaintiffs understood all fees to be paid to all parties herein to obtain credit on their behalf and not charge any fees that were not related to the settlement of the alleged loan entered into, and with full disclosure to Plaintiffs."  Amended Complaint at ¶ 64.

In Texas, a plaintiff may recover under an unjust enrichment theory where a person has "obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Unjust enrichment is a quasi-contractual claim that is based on *the absence* of an express agreement.  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000);  *First Union Nat'l Bank v. Richmont Cap. Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App.-Dallas 2005, no pet.).  "Generally, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory because parties should be bound by their express agreements*." Id.* (citing *Fortune*, 52 S.W.3d at 683).  Moreover, whether a plaintiff has a meritorious claim for breach of contract does not govern whether that remedy precludes a claim for unjust enrichment; rather, "the mere existence of potential contract claim bars the unjust enrichment remedy."  *In re Myles*, 395 B. R. 599, 605 (Bkrtcy. M.D. La. 2008).

Because Plaintiffs' allegations are governed by the loan agreements between Plaintiffs and Defendants at issue in this case, their unjust enrichment claims must be dismissed.  See *Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004) (holding that farmers failed to state claim for unjust

enrichment under Arkansas law against bank and agri-business, where farmers had a written contract with bank and agri-business for property and for poultry production businesses);  *In re Myles*, 395 B. R. 599 at 605 (dismissing plaintiffs' unjust enrichment claim that defendant improperly handled plaintiffs' mortgage payments where claim was covered by the plaintiffs' breach of contract claims). Accordingly, Defendants' Motions to Dismiss should be granted with regard to Plaintiffs' unjust enrichment claim.

Based upon the foregoing, the Court finds that Defendants' Motions to Dismiss should be GRANTED and all of Plaintiffs' claims against these Defendants should be dismissed.

## C.    John Doe Defendants

In addition to naming the above-Defendants, Plaintiffs' Amended Complaint also names "John Does 1 through 100." Amended Complaint at ¶ 11.  The Federal Rules of Civil Procedure "do not provide any authority for the joining of fictitious defendants." *Taylor v. Federal Home Loan Bank Bd.*, 661 F. Supp. 1341, 1350 (N.D. Tex. 1986).  Federal Rule of Civil Procedure 10(a) provides in relevant part: "Caption; Names of Parties. Every pleading must have a caption . . . . The title of the complaint must name all of the parties." FED. R. CIV. P. 10(a).  "Plaintiffs, even those proceeding *in forma pauperis*, have a duty to provide information sufficient to identify the defendants." *King v. Forest*, 2008 WL 4951049 (N.D. Tex. Nov. 14, 2008).  The Court finds that Plaintiffs have failed to provide the Court with sufficient facts to show that it has jurisdiction over the "John Does 1 through 100" and thus they should be dismissed from this lawsuit. *See Id.* (finding that unidentified defendants must be dismissed because courts lack personal jurisdiction over such defendants).

30

Plaintiffs' claims against the John Doe defendants should also be dismissed for the same reasons discussed above in reference to the identified Defendants in this case. Since Plaintiffs' claims against the identified Defendants have been found to be without merit, it is clear that the claims against the John Doe defendants also fail.

**D.    Conclusion**

Based upon the foregoing, the Court finds that Plaintiffs have failed to allege "enough facts to state a claim to relief that is plausible on its face" against any of the Defendants in this case. Because Plaintiffs have already been given one opportunity to amend their complaint, the Court can see no reason to afford them yet another bite at the apple. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 254-55 (5th Cir. 2003).   Accordingly, the Court RECOMMENDS that the District Court GRANT the Defendants' Motions to Dismiss.[11]

## V. RECOMMENDATION

The Magistrate Judge **HEREBY RECOMMENDS** that the District Court **GRANT** Defendant Barrett Daffin Frappier Turner & Engel, LLP's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Clerk's Docket No. 32), Defendant BAC Home Loans Servicing, L.P.'s 12(b)(6) Motion to Dismiss (Clerk's Docket No. 36) and Defendant National City Mortgage's Amended Motion to Dismiss Amended Complaint pursuant to Rule 12(b)(6) (Clerk's Docket No. 47).  The Magistrate **FURTHER RECOMMENDS** that the District Court **DISMISS** Defendants

---

[11]Defendant USA Mortgage d/b/a Lakeway Mortgage has not filed a Motion to Dismiss in this case and, thus, if this Report & Recommendation is accepted by the District Court, USA Mortgage d/b/a Lakeway Mortgage will be the only remaining defendant in this case.

John Does 1 through 100 for lack of personal jurisdiction unless the Plaintiffs properly identify the John Doe Defendants before the District Court accepts this Report & Recommendation.

## VI.  WARNINGS

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).   To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of August, 2010.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE